# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| STANLEY M. GRABILL, JR., | * | |
| Plaintiff | * | |
| v. | * | CIVIL No. JKB-13-039 |
| CORIZON, INC., | * | |
| Defendant | * | |

## MEMORANDUM

Stanley M. Grabill ("Plaintiff") brought this suit against Corizon, Inc. ("Defendant") alleging negligence. Now pending before the Court are Defendant's motion to dismiss (ECF No. 11) and Plaintiff's motion for leave to file a supplemental certificate of merit and report (ECF No. 13). The issues have been briefed and no hearing is required. Local Rule 105.6. For the reasons set forth below, Defendant's motion to dismiss will be GRANTED and Plaintiff's motion for leave to file a supplemental certificate of merit and report will be DENIED.

## I.     BACKGROUND[1]

Plaintiff is "a current resident at the Maryland Correctional Institute at Hagerstown in Washington County, Maryland." (Compl. ¶ 1; ECF No. 1.) Defendant is a Missouri corporation that was, at all relevant times, "under contract with the State of Maryland to provide health care services to inmates housed within the Maryland State Department of Corrections." (*Id.* ¶ 2.)

---

[1] The facts are recited here as alleged by the Plaintiff, this being a motion to dismiss. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

Plaintiff alleges that in 2004 and early 2005 he "began to experience abdominal symptoms, including a change in bowel habits and bleeding from the rectum." (*Id.* ¶ 7.) Plaintiff raised these symptoms with "physicians and health care providers" employed by Defendant. (*Id.* ¶ 8.) These doctors "repeatedly reassured [Plaintiff] that nothing serious was wrong, that he just had 'prostate problems,' and that he needed 'bed rest.'" (*Id.* ¶ 9.) The doctors "specifically failed and refused to send [Plaintiff] to the hospital to have his condition investigated and diagnosed." (*Id.*)

In February 2007, Plaintiff "began passing large amounts of blood in his stool." (*Id.* ¶ 10.) On February 20, 2007, he was taken to the hospital and diagnosed with "a cancerous tumor of his colon." (*Id.* ¶ 11.) Plaintiff underwent surgery, "which required a resection of the bowel, and the creation of a colostomy," which he still has. (*Id.* ¶ 12.) Plaintiff alleges that the failure by Defendant's employees to diagnose his cancer in 2004 or 2005 was due to their negligence, which allowed the tumor to develop and caused Plaintiff to require surgery and the colostomy. (*Id.* ¶¶ 14-16.)

As required by Maryland law, Plaintiff initially filed a statement of claim with the Health Care Alternative Dispute Resolution Office ("HCADRO") on February 18, 2010. (Pl. Br. in Support of Motion to Extend Time ¶ 1, ECF No. 13-1.) Plaintiff sought and received from HCADRO three extensions of time to file his certificate of merit and report. (*Id.* ¶¶ 2, 3.) On December 20, 2010, Plaintiff filed with HCADRO a certificate of merit and an expert report by Dr. Lambert King. (*Id.* ¶ 4.) On November 7, 2012, Plaintiff filed with HCADRO a notice of election to waive arbitration. (*Id.* ¶ 6.) On January 4, 2013, Plaintiff filed his complaint in this Court.

## II. LEGAL STANDARD

A motion to dismiss under FED. R. CIV. P. 12(b)(6) is a test of the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To pass this test, a complaint need only present enough factual content to render its claims "plausible on [their] face" and enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff may not, however, rely on naked assertions, speculation, or legal conclusions. *Bell Atl. v. Twombly*, 550 U.S. 544, 556-57 (2007). In assessing the merits of a motion to dismiss, the court must take all well-pled factual allegations in the complaint as true and construe them in the light most favorable to the Plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). If after viewing the complaint in this light the court cannot infer more than "the mere possibility of misconduct," then the motion should be granted and the complaint dismissed. *Iqbal*, 556 U.S. at 679.

## III. ANALYSIS

### A. Defendant's Motion to Dismiss

Defendant moves to dismiss the complaint on the grounds that Plaintiff's certificate of merit and report are insufficient as a matter of Maryland law. Among other arguments, Defendant contends that the certificate fails to identify the applicable standard of care and how it was breached. The Court agrees and, therefore, will dismiss the complaint.

In order to maintain an action for medical malpractice under Maryland law, plaintiffs are required initially to file their clams with HCADRO. *See* MD. CODE CTS. & JUD. PROC. § 3-2A-04(a)(1)(i).[2] As a condition precedent to pursuing their claim, plaintiffs are also required to "file

---

[2] Regardless of whether Defendant is a "health care provider" as that term is defined by Maryland law, this claim is subject to mandatory arbitration. *See Group Health Ass'n., Inc. v. Blumenthal*, 453 A.2d 1198, 1203-04 (Md. 1983).

a certificate of a qualified expert . . . attesting to the departure from standards of care, and that the departure from standards of care is the proximate cause of the alleged injury." *Id.* § 3-2A-04(b)(1)(i); *see also Carroll v. Konits*, 929 A.2d 19, 22 (Md. 2007) (holding that filing the certificate is a condition precedent). The certificate of merit must be filed "with a report of the attesting expert attached." *Id.* § 3-2A-04(b)(3)(i). The report—the filing of which, as a necessary part of the certificate, is also a condition precedent—must "explain how or why the physician failed or did not fail to meet the standard of care and include some details supporting the certificate." *Walzer v. Osborne*, 911 A.2d 427, 436-39 (Md. 2006) (holding that the certificate is incomplete if the expert's report is not attached); *see also Kearney v. Berger*, 7 A.3d 593, 605 (Md. 2010) (holding that the certificate must "indicate what the standard of care was or how the health care providers departed from it") (citing *Carroll*, 929 A.2d at 37-38).

Plaintiff's expert report is insufficient, because it does not set forth the relevant standard of care or explain how Defendant's employees departed from it. The report, in relevant part, states:

> Specifically, in early 2005 Mr. Grabill began to complain of changes in bowel habits, including pain and constipation, which symptoms were not significantly investigated. In early 2007, Mr. Grabill had recurrent and increased symptoms which ultimately resulted in his being sent to the Washington Hospital Center where a diagnosis of colon cancer was made. It is my opinion that a more thorough investigation of Mr. Grabill's complaints should have been performed in early 2005, and that had such an investigation been performed, it likely would have revealed the presence of a developing colon cancer, allowing for more prompt intervention and treatment. The delay in diagnosis also delayed treatment and allowed Mr. Grabill's cancer to progress during the intervening period and therefore caused him some injury. If the colon cancer had been diagnosed and treated in a timely manner, Mr. Grabill's probability of long-term survival would be significantly improved. Furthermore, the unwarranted delay in diagnosing and treating Mr. Grabill's colon cancer resulted in excessive pain and suffering after he developed severe bowel obstruction in February 2007.

(Report of Dr. Lambert King, ECF No. 12-1.) The closest the report comes to stating a standard of care is to suggest that, in response to Plaintiff's complaints in 2005, Defendant's employees should have "significantly investigated" the problem and performed "a more thorough investigation." These statements do not succeed in describing a standard of care, because they do not identify the minimum steps that should have been taken in response to specific complaints.[3] The legislature's purpose in requiring an expert's report be attached to the certificate was to provide details in order to "help weed out non-meritorious claims and assist the plaintiff or defendant in evaluating the merit of the health claim or defense." *Id.* at 438-39. Plaintiff's report merely asserts in conclusory language that Defendant's employees failed to meet the standard of care (itself undefined), which is insufficient under Maryland law. *See Walzer*, 911 A.2d at 438.

Plaintiff argues that the report is sufficient because it should be interpreted in conjunction with the statement of claim that Plaintiff filed with HCADRO. In essence, Plaintiff argues that the Court should import the factual allegations in Plaintiff's statement of claim into the expert report. In support of this argument, Plaintiff cites a case in which a panel of the Maryland Court of Special Appeals affirmed the trial court's interpretation of the term "Health Care Providers" by looking to the definition of that same term as defined in the statement of claim. *Barber v. Catholic Health Initiatives, Inc.*, 951 A.2d 857, 871 (Md. Ct. Spec. App. 2008). However, Plaintiff asks this Court to go much further than referring to the statement of claim in order to interpret a vague term, and he cites no authority for the proposition that the expert report can implicitly incorporate the factual allegations set forth in the statement of claim.

---

[3] If an expert report alleged that the doctors performed no investigation in response to a patient's complaint, the Court might interpret such an assertion as sufficiently alleging that the doctors had a duty to investigate but failed to do so. However, the allegation that the doctors did not *significantly* investigate the complaint is too vague to establish what steps the doctors took, what steps they should have taken, and why the steps they took were insufficient.

5

Furthermore, if the Court adopted Plaintiff's argument, then the expert report would be completely superfluous. The certificate to which the expert report is attached "is merely an assertion that the physician failed to meet the standard of care and that such failure was the proximate cause of the patient-plaintiff's complaints." *Walzer*, 911 A.2d at 583. Under Plaintiff's reasoning, the expert report could simply restate these same assertions and rely on the statement of claim to provide the factual basis for them. But "common sense dictates that the Legislature would not require two documents that assert the same information." *Id.* at 582-83. Indeed, the legislative purpose of the expert report requirement is to demand a basis above and beyond the statement of claim on which to "weed out non-meritorious claims." *Id.* at 583. That purpose would be eviscerated if the Court adopted Plaintiff's argument. Therefore, the Court will dismiss Plaintiff's complaint.

> B. **Plaintiff's Motion For Leave to File a Supplemental Certificate of Merit and Report**

Plaintiff seeks leave to file a supplemental certificate of merit and report to address the deficiencies identified above. The Court has authority to grant an extension of the deadline to file the certificate and "shall [do so] for good cause shown." MD. CODE CTS. & JUD. PROC. § 3-2A-04(5); *see also Kearney*, 7 A.3d at 612. Plaintiff has the burden of establishing good cause. *Kearney*, 7 A.3d at 612.

Maryland courts have identified "several broad categories" of circumstances that constitute good cause: (1) excusable neglect or mistake; (2) serious physical or mental injury and/or location out of state; (3) the inability to retain counsel in cases involving complex litigation; (4) ignorance of a statutory requirement; and (5) where representations made by government representatives are misleading. *See id.* at 613. Plaintiff has not demonstrated that this case falls within any of the good cause categories. Plaintiff has been represented by counsel

since he filed his statement of claim with HCADRO, he does not allege that he was incapacitated or out of state, he does not allege that he was ignorant of any statutory requirement, and he does not allege that he relied to his detriment on a misleading government representation.

The only circumstance that Plaintiff identifies to demonstrate good cause is that his lawyer, Stephen J. Hughes, passed away on June 4, 2012. Mr. Hughes' passing was undoubtedly tragic, and this Court would do everything in its power to prevent Plaintiff from being prejudiced by it. However, it does not appear that this tragedy caused the deficiencies in Plaintiff's certificate of merit and report. Plaintiff filed his statement of claim with HCADRO on February 18, 2010, received three extensions of the deadline for filing the certificate, and ultimately filed the certificate and report on December 20, 2010. (Pl. Br. in Support of Motion to Extend Time at 1-2.) Mr. Hughes passed away almost 18 months later. The expert report's deficiencies were clear and present long before Mr. Hughes died. Five months after Mr. Hughes' untimely death, Plaintiff's counsel filed a notice of election to waive arbitration and—after almost two more months—filed Plaintiff's complaint in this Court. (*Id.*)

On this record, it appears that Mr. Hughes had ample time to prepare Plaintiff's case and obtain the certificate and report. Furthermore, after his passing, his partners decided when to opt-out of arbitration and bring the claim to federal court. Plaintiff's brief—which establishes the Court's authority to grant an extension if good cause is demonstrated—does not identify any facts in support of a finding of good cause other than Mr. Hughes' passing. Therefore, Plaintiff has not met his burden of demonstrating that there is good cause for an extension of the deadline to file his certificate of merit and report.

## IV. CONCLUSION

Accordingly, an order shall issue GRANTING Defendant's motion to dismiss (ECF No. 11) and DENYING Plaintiff's motion for leave to file a supplemental certificate of merit and report (ECF No. 13).

Dated this <u>31st</u> day of July, 2013

BY THE COURT:

/s/
James K. Bredar
United States District Judge